IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KNIGHT SPECIALTY INSURNACE COMPANY | * | |
| Plaintiff, | * | Civil Case No.: SAG-25-2073 |
| v. | * | |
| EVERMORE CANNABIS COMPANY, LLC | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TEMESCAL WELLNESS OF MARYLAND, LLC d/b/a EVERMORE CANNABIS COMPANY, LLC | * |
| Counter-Plaintiff/Third-Party Plaintiff, | * |
| v. | * |
| KNIGHT SPECIALTY INSURANCE COMPANY | * |
| Counter-Defendant | * |
| and | * |
| STEVEN SHERMAN, J.D., *et al.* | * |
| Third-Party Defendants. | * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Knight Specialty Insurance Company ("Knight") brought this declaratory judgment action against its insured Evermore Cannabis Company, LLC. ECF 1. Thereafter, Temescal Wellness of Maryland, LLC d/b/a Evermore Cannabis Company, LLC ("Evermore") filed a counter-complaint/third-party complaint against Knight; Steven Sherman, J.D.; The Hilb Group of

Maryland, LLC d/b/a PSA Insurance and Financial Services, LLC ("PSA"); Global Risk Consultants Corp. ("Global Risk"); Preferred Reports; and Trisura Specialty Insurance Company d/b/a QuadScore Insurance Services ("QuadScore") based on the same underlying insurance dispute. ECF 6. Sherman and PSA, Preferred Reports, and Knight each filed a motion to dismiss the respective claims against them, ECF 17, 32, 36, which Evermore opposed, ECF 37, 38, 48. Sherman and PSA, Preferred Reports, and Knight each then filed a reply. ECF 43, 44, 51. Knight also filed a motion to strike the affirmative defenses asserted in Evermore's answer to the original complaint. ECF 35. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Preferred Reports's motion to dismiss, Knight's motion to dismiss, and Knight's motion to strike will be granted, and Sherman and PSA's motion to dismiss will be granted in part and denied in part.

I. BACKGROUND

The following facts are derived from Knight's complaint, ECF 1, and Evermore's counter-complaint/third-party complaint, ECF 6, and are assumed to be true for purposes of these motions.

Evermore operates a cannabis grow facility in Baltimore ("the Grow Facility"). ECF 6 ¶¶ 7, 18. In 2021, Evermore retained PSA and Sherman, an agent of PSA, to assist it in purchasing property and casualty insurance for the Grow Facility. *Id.* ¶¶ 22, 28. Both Sherman and PSA market themselves as experts in the cannabis insurance industry. *Id.* ¶¶ 23–25. After touring the Grow Facility, Sherman advised Evermore to purchase insurance from Knight, which, according to Sherman, was a leading cannabis insurer and would "properly and fully insure Evermore." *Id.* ¶¶ 27, 29–30.

Before issuing an insurance policy to Evermore, Knight retained QuadScore to assist Knight in the selection and administration of that policy. *Id.* ¶ 32. Knight and QuadScore then

retained Preferred Reports and Global Risk, both of which provide insurance inspection services. *Id.* ¶ 42. In April, 2021, Preferred Reports, acting as an agent of Knight, QuadScore, Sherman, and PSA, inspected the Grow Facility. *Id.* ¶ 48. No critical issues were identified during the inspection, and the inspector rated the opinion of risk as "Good" based on adequate controls and compliance with state requirements. *Id.* ¶ 49. Following the inspection, Knight issued yearly insurance policies to Evermore for the Grow Facility. *Id.* ¶ 55.

That policy expressly required that the Grow Facility feature smoke detectors throughout the building, "including but not limited to at least one smoke detector that is physically located in each grow room." *Id.* ¶ 62. The application for the policy, which was signed by Evermore's General Manager, attested that the Grow Facility had detectors in each grow room and acknowledged that coverage would be conditioned on the accuracy of the statements in the application and that misrepresentations in the application would render the policy null and void at inception. ECF 1 ¶¶ 6–8, 10, 12.

The Grow Facility has smoke detectors located in ducts that lead into and pull air out of the grow rooms. ECF 6 ¶ 78. The smoke detectors are physically located outside of the grow rooms. ECF 1 ¶ 55. Evermore alleges that Baltimore City Fire Department requires that smoke detectors for grow rooms be located in ducts, while Knight alleges that the Baltimore City Fire Department has no such requirement. ECF 6 ¶ 82; ECF 1 ¶ 25. Neither Knight, QuadScore, Global Risk, Preferred Reports, Sherman, nor PSA ever recommended that Evermore change the location of its smoke detectors or advised it that the placement of the smoke detectors violated the insurance policy. ECF 6 ¶ 59.

In April, 2024, a fire started in a grow room at the Grow Facility, and the smoke rendered the plants within the grow room unfit for human consumption. *Id.* ¶¶ 68, 72. Thereafter, Evermore

filed a claim under its insurance policy with Knight for damages resulting from the fire. *Id.* ¶ 73. When an adjuster and cause and origin expert met with Evermore on behalf of Knight following the fire, they both inquired about the location of smoke detectors before touring the Grow Facility. *Id.* ¶¶ 104–05. In December, 2024, Knight denied the claim based on Evermore's failure to comply with the requirement that the Grow Facility have at least one smoke detector physically located in each grow room. *Id.* ¶¶ 74–75. Knight concluded that this failure rendered the policy void at inception and attempted to refund Evermore's policy premium, which Evermore refused to accept. ECF 1 ¶¶ 77–78. The investigation into the fire did not determine that the location of the smoke detectors caused or failed to mitigate damages from the fire. ECF 6 ¶ 107.

Preferred Reports inspected the Grow Facility again in August, 2024 on behalf of Knight, QuadScore, Sherman, and PSA. *Id.* ¶ 56. The report again stated that no critical issues were identified and that the inspector's opinion of risk was "Good" based on adequate controls. *Id.* ¶ 57. The report also specifically noted that there were smoke detectors located in each grow room. *Id.*

Evermore's complaint alleges nine claims. Count I alleges professional negligence against Sherman and PSA. *Id.* ¶¶ 109–24. Count II alleges negligent misrepresentation against Sherman and PSA. *Id.* ¶¶ 125–34. Count III alleges breach of contract against Sherman and PSA. *Id.* ¶¶ 135–41. Count IV alleges promissory estoppel against Sherman and PSA. *Id.* ¶¶ 142–47. Count V alleges breach of contract against Knight. *Id.* ¶¶ 148–54. Count VI alleges bad faith under Md. Code Ann. Cts. & Jud. Proc. § 3-1701 against Knight. *Id.* ¶¶ 155–60. Count VII alleges negligent misrepresentation against Knight, Preferred Reports, Sherman, PSA, QuadScore, and Global Risk. *Id.* ¶¶ 161–76. Count VIII alleges professional negligence against Preferred Reports, QuadScore, and Global Risk. *Id.* ¶¶ 177–92. Finally, Count IX alleges civil conspiracy against Knight, Preferred Reports, Sherman, PSA, QuadScore, and Global Risk. *Id.* ¶¶ 193–99.

4

## II.  LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. In reviewing a motion to dismiss a third-party complaint, the court considers both the original plaintiff's complaint and the third-party plaintiff's complaint. *Hornsby v. United States*, 722 F. Supp. 3d 618, 623 (E.D. Va. 2024).

### III. DISCUSSION

#### A. Motion to Strike

Knight moves to strike all of the affirmative defenses asserted in Evermore's answer to Knight's complaint. Knight contends that Evermore has failed to plead any facts to support any of its listed affirmative defenses and pleads certain affirmative defenses that clearly do not apply. Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This rule authorizes a court to strike a defense that is insufficient as a matter of law because it fails to meet the pleading standards of Federal Rules of Civil Procedure 8 or 9. *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532, 534–535 (D. Md. 2010). Most district courts to have considered motions to strike affirmative defenses agree that the *Twombly* pleading standard applies to affirmative defenses such that "labels and conclusions" do not suffice. *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 3323221, at *2–3 (D. Md. July 24, 2019) (collecting cases and striking without prejudice defenses pled in conclusory fashion with no factual support).

Evermore's answer fails to meet this standard because it contains only "labels and conclusions." The answer merely lists twenty-six affirmative defenses without providing any factual allegations to support them. *See* ECF 5. This Court also agrees with Knight that it is clear on the face of the complaint that some purported defenses do not apply. For example, Evermore asserts affirmative defenses, like contributory negligence, related to damages and negligence, *see id.* ¶¶ 5–8, 19, 24, but Knight's complaint seeks only declaratory relief in contract. Additionally, although Evermore's first affirmative defense listed states that Evermore reserves the right to file motions relating to threshold matters such as personal jurisdiction and improper venue, *see id.* ¶ 1, Rule 12(b) expressly requires that a party must file such motions *before* filing a responsive

6

pleading, such as an answer. Accordingly, this Court will strike without prejudice Evermore's twenty-six affirmative defenses.

### B. Claims Against Sherman and PSA

#### 1. Shotgun Pleading

Sherman and PSA first argue that all claims against them must be dismissed because Evermore's complaint constitutes an impermissible shotgun pleading. A complaint that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" constitutes a "shotgun pleading." *Jackson v. Warning*, Civ. No. PJM 15-1233, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (quoting *SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, Civ. No. 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012)). A district court may *sua sponte* strike such a pleading. *Lee v. Meyers*, Civ. No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022) (citing *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020)).

This Court agrees with Sherman and PSA that Evermore's complaint is not a model of clarity. Moreover, at times, the complaint engages in impermissible group pleading by alleging that all of the counter- and third-party defendants engaged in some conduct without providing any factual allegations specific to any particular defendant. For example, it alleges that "all individuals and entities, including Sherman, PSA, QuadScore, Preferred Reports, Global Risk and Knight, consistently and repeatedly advised Evermore that it had complied with the terms of all insurance policies with the placement of the smoke detectors." *See* ECF 6 ¶ 6. This Court will not consider such allegations. Furthermore, as examined in more detail below, Evermore fails to plead most of its claims with sufficient factual support, and, accordingly, this Court will dismiss those claims. The complaint is not so indecipherable, however, that a defendant could not frame a pleading

responsive to it and that would warrant striking it in its entirety. This Court will therefore deny the request to strike the complaint as a shotgun pleading and will proceed to assess each claim.

### 2. Professional Negligence

Sherman and PSA contend that Evermore has failed to state a claim for professional negligence against them in Count I. A professional negligence claim requires proof of the same elements as a standard negligence action, but the professional is subject to the standard of care in his profession. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420 (2016), *aff'd*, 451 Md. 600 (2017).

Sherman and PSA argue that because Evermore signed the insurance application attesting that the Grow Facility had smoke detectors in each grow room, Evermore, rather than Sherman and PSA, is responsible for the denial of its claim. Sherman and PSA correctly note that Maryland law has long considered an entity that signs an insurance application bound to know what it signed. *See Metro. Life Ins. Co. v. Samis*, 172 Md. 517, 517 (1937). This Court is not convinced, however, that Evermore signing the application defeats its claim as a matter of law at this stage. Although Sherman and PSA do not phrase it in such terms, their argument sounds in causation and contributory negligence. "It is generally inappropriate, however, to resolve questions about causation and contributory negligence at the motion to dismiss stage." *Cook v. John Hancock Life Ins. Co. (U.S.A.)*, Civ. No. 7:12-cv-00455, 2015 WL 178108, at *19 (W.D. Va. Jan. 14, 2015) (citing *King v. Aaron Smith Trucking Co.*, 60 F.3d 823 (4th Cir. 1995)). Sherman and PSA may re-raise this argument as appropriate later in the proceeding, but this Court will not dismiss Count I on this basis now.

3. **Negligent Misrepresentation**

Sherman and PSA next argue that Counts II and VII, both alleging negligent misrepresentation, must also be dismissed because the complaint fails to allege any false statement made by Sherman and PSA. Negligent misrepresentation requires that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 627 n.18 (2017) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136–37 (2007)). Inaction, such as a failure to disclose, cannot form the basis for a negligent misrepresentation. *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 550 (D. Md. 1997) (dismissing negligent misrepresentation claim based on alleged failure to disclose information).

Most of the allegations made in support of these two claims in the complaint relate to a failure to disclose information. Specifically, Count II alleges failure to disclose that Sherman and PSA had not procured the coverage for which Evermore had applied, and Count VII alleges failure to disclose Knight's position regarding the placement of smoke detectors. As described above, failure to disclose information cannot support a negligent misrepresentation claim.

In its opposition, Evermore instead relies on statements by Sherman and PSA alleged elsewhere in the complaint, namely that Knight was a leading insurer of cannabis companies and would properly and fully insure Evermore. ECF 6 ¶ 30. The complaint does not allege, however, that the first statement, that Knight was a leading insurer of cannabis companies, was false. Moreover, even though Evermore appears to suggest that the statement that Knight would properly and fully insure Evermore was false because Knight denied Evermore's claim, this Court is not

9

persuaded. Denial of a claim does not necessarily negate "proper[] and full[]" insurance. Without greater specificity or context regarding the alleged statement, this Court cannot adequately assess whether the statement was false. Thus, Evermore has failed to plead claims for negligent misrepresentation, and this Court must dismiss Counts II and VII.

### 4. Breach of Contract

Sherman and PSA next argue that Evermore has failed to plead Count III, which alleges breach of contract. Under Maryland law, breach of contract requires a contractual obligation that the defendant owed the plaintiff and a breach of that obligation by the defendant. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). A plaintiff must establish these elements through more than "skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a contractual duty." *Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 481 (1977). In evaluating a breach of contract claim, a court must disregard "mere legal conclusions" that a contract existed to determine whether factual allegations have adequately pled the existence of a contract. *Dolan v. McQuaide*, 215 Md. App. 24, 33–34 (2013).

Evermore has failed to do so here. Count III alleges that "Sherman and PSA promised and contracted to procure the appropriate type of insurance needed by Evermore at [the Grow Facility]" and "breached their contracts to procure, select, obtain and furnish insurance to adequately cover [the Grow Facility]." ECF 6 ¶¶ 137, 139. Although the complaint explains Evermore's theory that Sherman and PSA failed to procure appropriate insurance in the sense that the policy did not cover the facility without smoke detectors in each grow room, the complaint provides no further description of the alleged contract between Sherman and PSA and Evermore. Without additional factual allegations regarding the alleged contract between the parties, this Court cannot evaluate this claim and must dismiss it.

5. **Promissory Estoppel**

Promissory estoppel under Maryland law requires (1) "a clear and definite promise," (2) "where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee," (3) which does induce actual and reasonable action or forbearance by the promisee," and (4) "causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996).

Like Evermore's breach of contract claim, this claim is not supported by sufficient factual allegations. The complaint references only Sherman and PSA's "promises to procure appropriate insurance." ECF 6 ¶ 146. Without any more information about what specifically Sherman and PSA allegedly promised, the complaint fails to identify a "clear and definite promise" that could form the basis for a promissory estoppel claim. Accordingly, Count IV must also be dismissed.

C. **Claims Against Preferred Reports**

Preferred Reports argues that the tort claims in Counts VII and VIII should be dismissed against it because it owed Evermore no duty. Under Maryland law, the economic loss doctrine generally prohibits recovery in tort for negligence that results in purely economic injury. *Balfour Beatty Infrastructure*, 451 Md. at 611. This doctrine does not bar recovery, however, if the plaintiff can demonstrate a duty through privity of contract or its equivalent between the parties. *Balfour Beatty Infrastructure*, 226 Md. App. at 440–41. A plaintiff demonstrates the equivalent of privity of contract by showing that an "intimate nexus" existed between the parties. *Id.* at 446 (quoting *Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 477 (2000)). The parties agree that no formal privity existed between Preferred Reports and Evermore because Preferred Reports acted on behalf of parties other than Evermore, but they disagree about whether Evermore has demonstrated an intimate nexus between them.

Developed in the context of accounting reports, the intimate nexus test requires that (1) the defendant knew that the report would be used for a particular purpose, (2) in the furtherance of which a known party was intended to rely, and (3) there was some conduct by the defendant linking it to that party evincing the defendant's knowledge of the party's reliance. *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 674, 692 (2000). In *Katz*, the court concluded that the plaintiff had satisfied the third "linking conduct" element by alleging that the defendant had met with the plaintiff to discuss the subject matter of the report at issue and had directly given the plaintiff a copy of that report even though the defendant had prepared the report for another party. *Id.* at 694.

Even drawing all reasonable inferences in Evermore's favor, as this Court must at this stage, this Court cannot conclude that Evermore's complaint satisfies the linking conduct element. The complaint alleges no interaction between Evermore and Preferred Reports beyond basic coordination that this Court must infer occurred to allow Preferred Reports to inspect the Grow Facility. The complaint does not allege that Evermore and Preferred Reports ever had any substantive discussions about the inspections or the reports that Preferred Reports prepared. Although it quotes from the reports, it does not specify how Evermore obtained those reports, which Preferred Reports had prepared on behalf of other parties. Other facts regarding the relationship between Evermore and Preferred Reports might be relevant to whether Preferred Reports engaged in linking conduct, but Evermore has failed to plead any. Thus, this Court will dismiss Counts VII and VIII against Preferred Reports.

### D. Claims Against Knight

### 1. Bad Faith

Knight first argues that Evermore has failed to plead a claim for bad faith under Md. Code Ann. Cts. & Jud. Proc. § 3-1701. Section 3-1701 provides a cause of action against first party insurers who fail to act in good faith, which the statute defines as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." § 3-1701(a)(5). In determining whether an insurer exhibited bad faith, courts consider the totality of the circumstances, including:

> (1) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (2) the substance of the coverage dispute or the weight of legal authority on the coverage issue; and (3) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 830 (D. Md. 2018) (quoting *All Class Constr., LLC v. Mut. Benefit Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014)). Failure to pay policy benefits is recoverable only in contract and may not support a bad faith claim. *Id.* at 832 ("[I]f Plaintiffs' sole ground for their lack of good faith claim was that Defendant did not pay sufficient policy benefits, their claim would be dismissed under Rule 12(b)(6).").

Evermore alleges that Knight exhibited bad faith by "failing to fully investigate the loss of Evermore, and the failure to settle, pay and resolve Evermore's claims, the improper denial of Evermore's claims without justification and making numerous and onerous document requests wholly unrelated to the claims of Evermore." ECF 6 ¶ 156. As noted above, a plaintiff may not pursue a bad faith claim based on failure to pay the benefits at issue, so that allegation cannot support Evermore's claim. Furthermore, Evermore's allegations that Knight failed to fully investigate the loss, denied the claim without justification, and made onerous irrelevant document

13

requests lack sufficient factual support for this Court to address them. The complaint fails to explain how Knight did any of these things. In its opposition, Evermore points only to its allegation that Knight's adjuster and cause and origin expert both asked about the location of the smoke detectors before their tours of the Grow Facility following the fire. *Id.* ¶¶ 104–05. This single factual allegation cannot suffice on its own to render Evermore's claim that Knight handled the claim in bad faith plausible. Accordingly, this Court must deny Count VI.

2. **Negligent Misrepresentation**

Knight also argues that Evermore has failed to plead a negligent misrepresentation claim against it. Evermore alleges that Knight negligently misrepresented that Evermore was in compliance with its insurance policy. It appears that Evermore bases this allegation on the reports that Preferred Reports prepared for Knight after inspecting the Grow Facility, the statements in the reports that the inspector's opinion of risk was "good," and the statement in the report following the fire that the Grow Facility had a smoke detector in each grow room. *Id.* ¶¶ 49, 57. The statement regarding the smoke detectors in the report following the fire cannot form the basis for this claim because it occurred after the fire, so Evermore could not have relied upon it at any time relevant to this case. Additionally, regardless of whether any statements in the report before the fire were false, as described above, the complaint does not allege that Knight or any of its agents, such as Preferred Reports, shared that report with Evermore. Accordingly, any statements in the report cannot form the basis for a claim that Knight made negligent misrepresentations to Evermore, and this claim must be dismissed.

E. **Civil Conspiracy Claims**

Finally, Sherman, PSA, Preferred Reports, and Knight all seek to dismiss the civil conspiracy claims against them. Civil conspiracy requires "(1) a confederation of two or more

persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007) (quoting *Van Royen v. Lacey*, 262 Md. 94, 97–98 (1971)). A plaintiff may prove a conspiracy through circumstantial evidence alone. *Hoffman v. Stamper*, 385 Md. 1, 25 (2005). The court may infer the existence of a conspiracy through "the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." *Id.* at 25–26 (quoting *W. Md. Dairy v. Chenowith*, 180 Md. 236, 243–44 (1942)).

This Court concludes that Evermore has failed to plead sufficient facts from which this Court may infer a conspiracy. As described above, the complaint generally contains limited factual allegations, and it contains no allegations suggesting an agreement to injure Evermore. No allegations suggest that any of the counter- or third-party defendants would have any interest in Evermore procuring a policy that Knight would later declare void at inception, particularly in light of the fact that Knight attempted to refund Evermore's premium, rather than merely deny the claim. Moreover, the complaint generally alleges that the counter- and third-party defendants acted with negligence, a mental state that evinces a lack of the agreement necessary to support a conspiracy. This Court will therefore dismiss the civil conspiracy claims as well.

IV. **CONCLUSION**

For the reasons stated above, Preferred Reports's motion to dismiss, ECF 32, Knight's motion to dismiss, ECF 36, and Knight's motion to strike, ECF 35, will be granted, and Sherman and PSA's motion to dismiss, ECF 17, will be granted except as to Count I. Accordingly, the

affirmative defenses in Evermore's answer, ECF 5, will be stricken, Counts II, III, IV, and VI of the counter-complaint/third-party complaint will be dismissed, and Counts VII, VIII, and IX of the counter-complaint/third-party complaint will be dismissed except as to QuadScore and Global Risk. A separate Order follows.

Dated: February 5, 2026

/s/
Stephanie A. Gallagher
United States District Judge